UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

HERBERT CEPHAS,

     Petitioner,    :

             :

   - against -     :

ROBERT ERCOLE,      :

     Respondent.   :
--------------------------------X

**MEMORANDUM AND ORDER**

07 Civ. 6048 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

   Herbert Cephas, currently incarcerated at Green Haven Correctional Facility in Stormville, New York, brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted following a jury trial in the Supreme Court of New York, New York County, of Criminal Sale of a Controlled Substance in the Third Degree, N.Y. Penal Law § 220.39(1). On May 16, 2003, the trial court imposed an indeterminate sentence of imprisonment for fifteen (15) years to life. Petitioner seeks a writ of habeas corpus on five grounds: (1) the verdict was against the weight of evidence; (2) the prosecutor knowingly offered false testimony; (3) the prosecutor improperly vouched for the credibility of a government witness in her summation; (4) petitioner received ineffective assistance of counsel; and (5) the sentence was unduly harsh. For the reasons set forth herein, the petition is denied.

## FACTUAL BACKGROUND[1]

Shortly before 7:00 P.M. on August 21, 2001, as part of a street-level narcotics operation, Police Officer Paul Jeselson ("Officer Jeselson") was posted on the rooftop of an eight-story building located on the corner of 123rd Street and 7th Avenue in Manhattan.    Tr. at 29.    With the aid of binoculars, Officer Jeselson observed Jacqueline Garrett ("Garrett") approach an individual whom he recognized from previous contact as petitioner.  Tr. at 27, 44-45, 57-58.  He then witnessed Garrett hand the individual money in exchange for a small white object, which Jeselson later stated was "consistent with the packaging of heroin."  Tr. at 30-32.  Officer Jeselson immediately radioed the apprehension team with descriptions of Garrett and petitioner.    Id.    Shortly thereafter, Officer Frank Papa arrested Garrett and recovered two glassines of heroin found in her possession, one of which was labeled "Return of the Mummy" and the other "Empty Head."  Tr. at 111.  Without binoculars, Officer Jeselson then observed the dealer walking towards and seeming to enter 151 West 123rd Street.    Tr. at 37, 53, 79. Though he immediately left his post in pursuit, Jeselson was unable to apprehend the dealer.    Tr. at 37, 79-80.    Two days

---

[1]    The following facts are garnered from the parties' briefs and other submissions included as exhibits to respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus ("Opp'n Decl."), the trial transcript, ("Tr."), and the sentencing transcript of September 25, 2003 ("Sent.Tr.").

2

later, Officer Jeselson encountered petitioner on the street and arrested him.  Tr. at 43.

## PROCEDURAL HISTORY

Petitioner was indicted in New York Supreme Court on August 31, 2001 for Criminal Sale of a Controlled Substance in the Third Degree.  Opp'n Decl. Ex. L, at 2.  At trial, petitioner asserted a mistaken identity defense.  Garrett testified that, on the day of her arrest, she had purchased one glassine of heroin from a friend, Samuel Carrington ("Carrington"), and a second from petitioner.[2]  Tr. at 91-96.  The prosecution introduced corroborating testimony from Officer Jeselson of petitioner's involvement in the sale of one glassine of heroin. Id. at 11.  The jury found petitioner guilty of the charge on January 24, 2002.  Id. at 2.  The Court subsequently denied petitioner's motion to set aside the verdict on the grounds that he was denied effective assistance of trial counsel.

The petitioner's prior criminal history exposed him to an enhanced sentence pursuant to New York's persistent felony offender statute, N.Y. Penal Law § 70.10.  Following a hearing on the issue, the trial judge sentenced petitioner as a

---

[2]    On the same day petitioner was alleged to have been distributing heroin, Jeselson also observed Carrington making several drug-related transactions in the area.  Officer Jeselson's colleagues arrested Carrington and found several "Empty Head" and "Return of the Mummy" glassines in his possession.

3

persistent felony offender to an indeterminate prison term of fifteen (15) years to life.  Opp'n Decl. Ex. J, at 5, Ex. L, at 3.    The Court also summarily denied petitioner's motion to set aside the verdict pursuant to N.Y. CPL 440.10, on the grounds that (1) inconsistencies between Officer Jeselson's testimony at the sentencing hearing and that at trial highlighted the falsity of his trial testimony; and (2) trial counsel provided ineffective assistance.  Opp'n Decl. Ex. G.

Petitioner asserted five claims on appeal to the Appellate Division, First Department: (1) the jury's verdict was against the weight of the evidence; (2) the prosecutor knowingly introduced false testimony; (3) the prosecutor improperly vouched for the credibility of a witness during summation; (4) petitioner was denied effective assistance of counsel at trial; and (5) the judge's imposition of an enhanced sentence under New York's persistent felony offender statute was unconstitutional. Id. at 6.  Three months after petitioner's appeal was filed, the Court of Appeals upheld the constitutionality of New York's persistent felony offender statute.    See People v. Rivera, 5 N.Y.3d 61, 800 N.Y.S.2d 51 (June 9, 2005), cert. denied, 546 U.S. 984 (2005).  In his reply brief, petitioner acknowledged that he had to "withdraw" the fifth claim in light of Rivera but nevertheless substituted it with a final claim, (6) that the sentence was unduly harsh and should be reduced as an exercise

4

of the Appellate Division's discretion in the interest of justice. Opp'n Decl. Ex. K; id. Ex. M, at 21. On February 21, 2006, the Appellate Division affirmed the judgment of conviction, holding that: (1) the verdict was not against the weight of the evidence; (2) the trial court properly rejected petitioner's CPL § 440.10 motion without a hearing, given that petitioner failed to show use of false material evidence; (3) the petitioner received effective assistance of counsel; (4) the trial court properly exercised its discretion in sentencing petitioner as a persistent felony offender; and (5) petitioner's remaining contentions were unpreserved. Opp'n Decl Ex. N.

On March 29, 2006, petitioner sought leave to appeal to the New York Court of Appeals on the following grounds: (1) the Appellate Division failed to review the facts of the case to determine whether the conviction was against the weight of the evidence; (2) the Appellate Division failed to apply the correct standard of review in refusing to reduce the petitioner's sentence in the interest of justice; (3) he received ineffective assistance of trial counsel; and (4) he was denied due process when the trial judge failed to vacate conviction or order a hearing after a prosecution witness contradicted his trial testimony at the sentencing hearing. Opp'n Decl. Ex. O. In an order dated June 9, 2006, the Honorable George Bundy Smith,

Associate Judge of the New York State Court of Appeals, denied petitioner's application. Opp'n Decl. Ex. R.

The instant habeas petition, filed June 8, 2007, seeks relief on the grounds raised in petitioner's direct appeal as well as his motions to set aside the verdict pursuant to CPL § 330.30 and CPL § 440.10.

## DISCUSSION

### I. Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), grants wide deference to state court determinations of both law and fact and thereby restricts the ability of federal courts to grant writs of habeas corpus to state prisoners. We first discuss the procedural prerequisites for habeas relief and then discuss the substantive standards of review.

### A. Procedural Requirements

Before bringing a federal habeas claim, a petitioner convicted in state court must exhaust his state remedies by presenting his federal constitutional claims to the highest state court available. 28 U.S.C. § 2254(b); Picard v. Connor, 404 U.S. 270, 275 (1971); Ramirez v. Attorney Gen. of N.Y., 280 F.3d 87, 94 (2d Cir. 2001). The claim must have been framed so

as "to give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Federal habeas review of a claim is also prohibited if a state court rests its judgment on an independent and adequate state ground, such as state procedural default. Coleman v. Thompson, 501 U.S. 722, 729 (1991); Cotto v. Herbert, 331 F.3d 217. 238 (2d Cir. 2003).

A petition may be excused from these procedural requirements upon a showing of (1) both cause and prejudice for the failure to comply or (2) a "fundamental miscarriage of justice." Coleman, 501 U.S. at 735. In order to demonstrate cause, petitioner must show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. See McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). To show prejudice, petitioner must establish "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

To meet the fundamental miscarriage of justice exception, a petitioner must establish that a constitutional violation "has probably resulted in the conviction of one who is actually

7

innocent." <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002).
Actual innocence "means factual innocence, not mere legal
insufficiency;" petitioner must show that it is more likely than
not that no reasonable juror would have convicted him in light
of all the evidence. <u>Id.</u>

### B. Substantive Standards

Where a claim has been adjudicated in state court on the
merits, habeas review is only permissible if the state decision
(1) was "contrary to, or involved an unreasonable application
of, clearly established law, as determined by the Supreme
Court," or (2) involved "an unreasonable determination of the
facts." 28 U.S.C. §§ 2254(1), (2). A decision is contrary to
clearly established Supreme Court precedent if the state court
"confronts a set of facts that are materially indistinguishable"
from a Supreme Court decision, and nonetheless arrives at a
different result. <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000).

### II. Petitioner's Claims

Cephas's petition raises five claims: (1) the jury's
verdict was against the weight of the evidence; (2) the
prosecutor procured a conviction by knowingly introducing false
testimony; (3) the prosecutor improperly vouched for the
credibility of a witness during summation; (4) petitioner was

denied effective assistance of counsel at trial; and (5) the
sentence was unduly harsh.[3]    We note parenthetically that
petitioner's challenge to the constitutionality of the trial
court's determination of persistent felony offender status,
which was withdrawn in the reply brief to the Appellate
Division, is not before the Court.[4]

---

[3]    We do not consider two additional claims that were raised before the
Court of Appeals.  The first, that the Appellate Division performed weight of
evidence review incorrectly, was based on the Appellate Division's duties
under New York C.P.L. § 470.15(5).  The second, that the Appellate Division
failed to apply the correct standard of review when considering whether the
sentence was unduly harsh, was grounded in the Appellate Division's interest
of justice jurisdiction under NY C.P.L. § 470.15(6).  Neither claim fairly
presents a federal constitutional question, see, e.g., King v. Cunningham,
442 F. Supp. 2d 171, 181 (S.D.N.Y. 2006), and habeas review is not available
where the error alleged is one of state law.  See Lewis v. Jeffers, 497 U.S.
764, 780 (1990).

[4]    Even if we liberally construed the petition to include this claim,
which appears to be meritless given the Second Circuit's post-Apprendi
jurisprudence, see, e.g., Brown v. Miller, 451 F.3d 54 (2d Cir. 2006); Brown
v. Greiner, 409 F.3d 523 (2d Cir. 2005), there is no demonstrable cause for
the default or the failure to exhaust it before the Court of Appeals.
    In a letter to this court dated February 8, 2008, petitioner suggests
that appellate counsel's unreasonable decision to "withdraw" the claim not
only constitutes ineffective assistance but also suffices under the cause-
and-prejudice test to excuse the default.  However, in order to constitute
cause, an ineffective assistance claim itself must be exhausted.  Edwards v.
Carpenter, 529 U.S. 446, 451-52 (2000).  New York provides a remedy for
ineffective assistance of appellate counsel claims in the form of a petition
for coram nobis to the Appellate Division, Aparicio v. Artuz, 269 F.3d 78, 87
n.1 (2d Cir. 2001) (citing People v. Bachert, 69 N.Y.2d 593, 516 N.Y.S.2d 623
(1987)).    Petitioner's unexhausted ineffective assistance of appellate
counsel claim cannot excuse his omission.
    Moreover, petitioner cannot demonstrate cause for the delay in seeking
state court relief on his ineffective assistance of appellate counsel claim.
The record establishes that petitioner waited almost two years to file a
petition for coram nobis and has not proffered a valid excuse for the lack of
diligence.    Although he did not receive appellate counsel's affidavit in
support of the ineffective assistance claim until September, 2007, petitioner
had notice of his claim well before that time.
    In any event, the ineffective assistance of appellate counsel claim
does not appear to be meritorious.  To constitute cause, attorney error must
reach the level of constitutionally ineffective assistance.    Murray v.
Carrier, 477 U.S. 478, 479 (1986).  Here, it was not constitutionally
ineffective for appellate counsel to decide that it would be in Cephas's
interest to maintain his credibility and bolster the argument in favor of a

We consider petitioner's five grounds for relief in seriatim.

## A. Conviction is Against the Weight of the Evidence

Petitioner claims that his conviction was supported only by "the inconsistent and conflicting stories of two witnesses," and was therefore against the weight of the evidence. Opp'n Decl. Ex. J, at 16.   This claim is not cognizable on habeas review.[5] In federal court, "[a]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal."   Maldonado v. Scully, 86 F.3d 32, 25 (2d Cir. 1996); Folk v. Philips, No. 05-CV-557, 2007 WL 4264577, at *7 (E.D.N.Y. Nov. 30, 2007); see 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the

___

discretionary sentence reduction by conceding the continuing vitality of a claim that had been recently foreclosed by the Court of Appeals.   See Smith v. Murray, 477 U.S. 527, 534-36 (1986) (noting that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.").

[5]    While petitioner included a weight of evidence challenge in his submissions to the state trial court and Appellate Division, he did not raise this claim before the Court of Appeals.   However, this omission does not render the claim unexhausted, as federal law requires only that the petitioner exhaust those remedies that are available in state court before obtaining habeas review.   28 U.S.C. § 2254(b).   Because the New York Court of Appeals does not have the power to review weight of evidence determinations made by the Appellate Division in non-capital cases, as a review of factual rather than legal determination, petitioner exhausted the final state remedy available to him. N.Y. CPL § 470.35; see People v. Danielson, 9 N.Y.3d 342, 349, 849 N.Y.S.2d 480 (2007).

petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty").[6]

### B. Knowing Use of Material False Testimony

Petitioner's second claim, which alleges that Officer Jeselson offered perjured testimony with the prosecutor's

---

[6]    In his reply brief, petitioner appears to suggest that he has properly exhausted a challenge to the legal sufficiency of the evidence supporting his conviction. A fair reading of his submissions to the Appellate Division does not support this assertion, as the language used and the legal precedent cited remain grounded in the state law weight-of-evidence theory. Moreover, petitioner did not pursue the claim in the Court of Appeals, a competent court to hear such a constitutional challenge. Thus, this claim remains unexhausted.

Nevertheless, we would deny the legal sufficiency claim as "patently frivolous." See, e.g., Sosa v. Mohawk Corr. Fac., No. 07 Civ. 5916(NRB), 2008 WL 534764 (NRB), at *6 (S.D.N.Y. Feb. 25, 2008); Hamm v. Payant, No. 05 CV 8158, 2007 WL 403497, at *3 (S.D.N.Y. Feb. 6, 2007). The Fourteenth Amendment protects a defendant from conviction in the absence of sufficient evidence to establish guilt beyond a reasonable doubt. See Fiore v. White, 531 U.S. 225, 229 (2001). "A habeas petitioner challenging the sufficiency of the evidence supporting his conviction bears a heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995), cert. denied, 515 U.S. 1136 (1995). The standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Only when the record is totally devoid of evidentiary support is a due process issue raised and habeas corpus relief warranted." Gonzalez v. Reiner, 177 F. Supp. 2d 211, 218 (S.D.N.Y. 2001); see Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994).

We find no merit to petitioner's challenge to the sufficiency of the evidence adduced at trial. The petitioner was convicted under New York Penal Law (NYPL) § 220.39, which provides, in relevant part, that "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." Garrett testified that she approached petitioner, asked him to sell her a bag of "dope," and received the glassine of heroin that was later found in her possession. Tr. at 95-96. This testimony, corroborated by that of Officer Jeselson, is sufficient for a rational juror to find the elements of the crime proven, namely, that petitioner knowingly sold heroin to Garrett. Tr. at 26-27, 30-35. As the Second Circuit has explained, even "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983); United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979), cert. denied, 441 U.S. 951 (1979).

knowledge and approval, similarly fails to warrant habeas relief.

It is well established that a defendant's due process rights are violated if the prosecutor knowingly uses perjured testimony to obtain his conviction. See Mooney v. Holohan, 294 U.S. 103, 112 (1935); United States v. Agurs, 427 U.S. 97, 103 (1976) ("[T]he Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair."). A witness commits perjury if he or she gives "false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001); see also United States v. Dunnigan, 507 U.S. 87, 94 (1993). Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury. See Monteleone, 257 F.3d at 219; United States v. Sanchez, 969 F.2d 1409, 1414-15 (2d Cir. 1992).

A showing of perjury alone, however, is not sufficient to show a constitutional violation. Shih Wei Su v. Filion, 335 F.3d 119, 126 (2d Cir. 2003) (finding that such a violation is not "structural" in that it "so fundamentally undermine[s] the fairness or the validity of the trial that [it] require[s] voiding [the] result [of the trial] regardless of identifiable

prejudice."). Thus, in order to challenge the conviction, petitioner must also show that the Government knew or should have known that the testimony was false, and that there was a "reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Helmsley, 985 F.2d 1202, 1205-6 (2d Cir. 1993) (quoting Agurs, 427 U.S. at 103).

Petitioner bases his claim on inconsistencies in Officer Jeselson's testimony. At trial, Jeselson stated that he observed "the defendant walk[] across the street into 151 W. 123rd Street" after the exchange took place. Tr. at 37. At the sentencing hearing, when pressed about whether he had actually seen defendant enter the building, Jeselson stated: "He walked into my angle, he walked in towards the door and disappears." Sent.Tr. at 14. He then agreed that because he was standing on the rooftop of a building on the same side of the street as 151 W. 123rd Street, he could not see the front door of that building. Sent.Tr. at 15. The state Appellate Division found that the inconsistency in testimony was "at most, a minor discrepancy" not rising to the level of "false testimony." Opp'n Decl. Ex. N, at 1. This Court will not disturb the Appellate Division's determination unless it is contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. 2254(d)(2).

13

We agree with the Appellate Division that petitioner has not made a showing that Officer Jeselson perjured himself at trial. The inconsistency – stating first that he saw the petitioner enter the building and later that he only saw the petitioner turn and walk towards the door of the building and disappear from view – does not amount to the kind of "false testimony" required to implicate petitioner's due process rights. The Officer's first statement appears to suffer only from vagueness in failing to detail the observations that led him to believe that the petitioner had entered the building. Moreover, there is no evidence of willful intent to mislead in the discrepancy.

Even if the statement at trial was false, we cannot find a reasonable likelihood that it affected the jury's verdict. The material portion of Officer Jeselson's testimony was his statement that he witnessed petitioner giving Garrett a glassine of heroin in exchange for money. This testimony, confirmed by the testimony of Garrett, directly supports the charge of third degree criminal sale of a controlled substance. The Officer's statement that he saw petitioner enter the building on 123rd Street was relevant only to explaining why petitioner was not apprehended immediately after the exchange took place. Furthermore, the fact that his view of the entrance of the building was obstructed was not relevant to his ability to see

14

the exchange.   Because this issue was secondary, we do not find

that the "defendant would most likely not have been convicted"

absent the testimony.   Sanders v. Sullivan, 863 F.2d 218, 226

(2d Cir. 1988).[7]

### C. Summation

Petitioner further claims that the prosecutor violated his

right to a fair trial by improperly vouching for the testimony

of government witnesses.   This claim was denied by the Appellate

Division as "unpreserved" and, as such, we are precluded from

reviewing it.   Opp'n Decl. Ex. N, at 2 ("Defendant's remaining

contentions are unpreserved, and we decline to review them in

the interest of justice."); see also CPL § 470.05(2).   The

Second Circuit has long recognized New York's contemporaneous

objection rule as an independent and adequate state procedural

rule.   See Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999).

---

[7]      Petitioner makes the further claim that the trial court denied him due
process in failing to grant a post-conviction hearing on this question.
However, "federal habeas relief is not available to redress alleged
procedural errors in state post-conviction proceedings." Diaz v. Greiner,
110 F. Supp. 2d 225, 235 (S.D.N.Y. 2000) (quoting Ortiz v. Stewart, 149 F.3d
923, 939 (9th Cir. 1998)). Accordingly, this claim should be dismissed. In
his reply brief, petitioner also requests that this Court hold an evidentiary
hearing to further explore the possibility of prosecutorial misconduct. In
determining whether to grant an evidentiary hearing, "a federal court must
consider whether such a hearing could enable an applicant to prove the
petition's factual allegations, which if true, would entitle the applicant to
federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007).
"[I]f the record refutes the applicant's factual allegations or otherwise
precludes habeas relief, a district court is not required to hold an
evidentiary hearing." Id. Because we have already found that the challenged
statement did not affect the jury's verdict, even a factual finding that the
prosecutor knowingly presented false testimony would be insufficient to
sustain the claim. Thus, we also deny this request.

Absent any showing of cause and prejudice or record support for a finding of actual innocence, habeas review of this claim is procedurally barred.

### D. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel at trial in violation of his Sixth Amendment rights. The first aspect of petitioner's ineffective assistance claim charges several alleged deficiencies in trial counsel's cross examination of Garrett, including her failure to: (a) elicit the details of Garrett's rap sheet on a case by case basis; (b) ask Garret about her current drug habits; or (c) ask why Garrett did not buy both brands of heroin from her long-time friend Samuel Carrington, rather than purchasing one from him and another from an individual unknown to her at the time but later identified as petitioner. Second, petitioner asserts that trial counsel gave an ineffective summation, as she neither indicated the "far fetched" nature of Garrett's testimony nor persuasively challenged the prosecution's case. Opp'n Decl. Ex. K, at 29, 31.

Ineffective assistance of counsel claims must meet the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, counsel's conduct must fall "below an objective standard of reasonableness" under "prevailing professional

norms." Id. at 688. In analyzing this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, the ineffective assistance must have resulted in real prejudice such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 690, 694.

Since there are a number of rational reasons that may have guided defense counsel's conservative approach, we do not find the cross examination of Garrett to have been ineffective. The conduct of cross-examination is typically a question of trial strategy that habeas courts will not second guess unless there is no tactical justification for the course taken. Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)). Defense counsel did elicit the fact that Ms. Garrett was a convicted felon and had been arrested several times for drug offenses. Tr. at 101. Assuming that the minutiae of her prior convictions and current drug habits were proper lines of questioning on cross examination, petitioner has not suggested any specific advantage that would have derived from developing such testimony. This Court will not second guess counsel's apparent decision that

17

further inquiry was unnecessary and cumulative of the direct and cross examinations.  Counsel might have reasonably decided not to ask Garrett why she bought the different brands of heroin from two different dealers in order to avoid eliciting a plausible or convincing explanation.  Notwithstanding counsel's conservative questioning, the argument was fairly presented to the jury because counsel made the point effectively in her closing.  Tr. at 144-45.

Though an incompetent summation may demonstrate ineffective assistance of counsel, see U.S. v. Jordan, 927 F.2d 53 (2d Cir. 1991), defense counsel's alleged lack of persuasiveness does not reach this level.  The record demonstrates that she attacked the credibility of both of the prosecutions' witnesses, offering theories as to why both Officer Jeselson and Garrett might lie on the stand.  Tr. at 135.  Additionally, we note that petitioner's trial counsel defended him vigorously, making pre-trial motions, securing pre-trial hearings, cross examining the prosecution's witnesses, delivering a comprehensive summation, and filing a motion to set aside the jury's conviction.  Opp'n Decl. Ex. L, at 2-4.  Accordingly, we do not find the trial judge's holding that "trial counsel's strategies and actions indicate meaningful representation," Opp'n Decl. Ex. C at 2, is contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. 2254(d)(2).

Furthermore, petitioner has wholly failed to establish that there is a "reasonable probability" that, but for defense counsel's failure to impeach Garrett more aggressively or give a more effective summation, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Since Garrett's testimony was corroborated by that of a police officer, it is unlikely that any attacks on her character in cross examination or summation would have impacted the jury's verdict.

### E. Unduly Harsh Sentence[8]

Finally, petitioner has defaulted his challenge to the sentence imposed by the trial court because that argument was raised for the first time in his reply brief to the Appellate Division. Opp'n Decl. Ex. N, at 2 ("Defendant's remaining contentions are unpreserved, and we decline to review them in the interest of justice."); See People v. Abreu, 248 A.D.2d 124 (1st Dept. 1998) (holding that a substantive issue raised for the first time in the reply brief "is not properly before the Court."). This procedural default constitutes an independent

---

[8] Since petitioner has asserted this claim before the state courts in terms so particular as to suggest a violation of the Eighth Amendment prohibition against cruel and unusual punishment, we find that the claim presents a constitutional question. Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (holding that a defendant may fairly present the constitutional nature of his claim by ''assert[ing] the claim in terms so particular as to call to mind a specific right protected by the Constitution'').

and adequate state ground for decision.   Coleman, 501 U.S. at 750.   Given petitioner's failure to demonstrate cause and prejudice or a fundamental miscarriage of justice, we find that federal habeas review is barred.

Even   assuming   arguendo   that   the   claim   had   not   been defaulted, we note that "[n]o federal constitutional issue is presented   where   .   .   .   the   sentence   is   within   the   range prescribed by state law."   White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).   Here, petitioner does not dispute that his sentence falls within the statutory range and, thus, cannot state an Eighth Amendment violation.

## CONCLUSION

For   the   foregoing   reasons,   Cephas's   petition   for   habeas corpus   relief   is   DENIED.   As   petitioner   has   not   made   a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.   See 28 U.S.C. § 2253(c).   In   addition,   we   certify   that   any   appeal   from   this decision would not be taken in good faith.   See 28 U.S.C. § 1915(a)(3).

Dated:      New York, New York
            April 29, 2008

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

20

Copies of the foregoing Memorandum & Order have been mailed on this date to the following:

Petitioner:
Herbert Cephas, 03 A 5301
Green Haven Correctional Facility
PO Box 4000
Stormville, NY 12582-0010

Counsel for Respondent:
Priscilla Steward, Esq.
Office of the Attorney General, State of New York
120 Broadway
New York, NY 10271